| | |
|---|---|
| **LaMONICA HERBST & MANISCALCO, LLP**<br>3305 Jerusalem Avenue<br>Wantagh, New York 11793<br>Telephone: (516) 826-6500<br>Gary F. Herbst, Esq.<br>Holly Rai, Esq. | Hearing Date & Time: July 25, 2011 at 10:00 a.m.<br>Objections Due: July 18, 2011 by 12:00 p.m. |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:

DAVID GOLDMAN,

        Debtor.
-------------------------------------------------------x

Chapter 7
Case No.: 11-11371 (SHL)

**NOTICE OF MOTION BY CHAPTER 7 TRUSTEE FOR ORDER APPROVING STIPULATION (1) AUTHORIZING TRUSTEE TO: (A) ASSUME AND ASSIGN ANY AND ALL OF THE ESTATE'S RIGHTS IN A LEASE FOR 420 RIVERSIDE DRIVE, UNIT GE, NEW YORK, NEW YORK 10025; (B) SELL ANY AND ALL OF THE ESTATE'S RIGHTS AND INTERESTS IN A LEASE FOR 420 RIVERSIDE DRIVE, UNIT GE, NEW YORK, NEW YORK 10025; AND (2) GRANTING RELATED RELIEF**

      **PLEASE TAKE NOTICE** that on **July 25, 2011 at 10:00 a.m.** (the "Hearing"), or as soon thereafter as counsel may be heard, a hearing will be held before the Honorable Sean H. Lane at the United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York 10004, on the Motion (the "Motion") of Salvatore LaMonica, Esq. (the "Trustee"), the chapter 7 trustee of the estate of David Goldman (the "Debtor"), by his counsel, LaMonica Herbst & Maniscalco, LLP, seeking the entry of an Order: (I) approving the stipulation between the Trustee and James Development (the "Landlord"): (A) authorizing the Trustee to assume and assign any and all of the estate's rights in a lease (the "Lease") for 420 Riverside Drive, Unit GE, New York, New York 10025 (the "Premises") to the Landlord; (B) sell any and all of the estate's rights and interests in the Lease for the Premises to the Landlord; and (II) granting related relief.

**PLEASE TAKE FURTHER NOTICE** that objections to the relief requested in the Motion, if any, must be in writing, conform with the Bankruptcy Code and Rules, state with particularity the grounds therefor, and be filed with the Clerk of the Court, with a courtesy copy to the Chambers of the Honorable Sean H. Lane, United States Bankruptcy Judge, and served upon, so as to be received by, LaMonica Herbst & Maniscalco, LLP, the attorneys for the Trustee, Attn: Gary F. Herbst, Esq., no later than **July 18, 2011 by 12:00 p.m.,** which is seven (7) days prior to the Hearing, as follows: (I) through the Bankruptcy Court's electronic filing system (in accordance with General Order M-242 and any amendments or supplemental standing orders of the Court), which may be accessed through the internet at the Bankruptcy Court's website at [www.nysb.uscourts.gov](www.nysb.uscourts.gov) in portable document format (PDF) using Adobe Exchange Software for conversion; or (II) if a party is unavailable to file electronically, such party shall submit the objection in PDF format on a diskette in an envelope with the case name, case number, type and title of document, document number to which the objection refers and the file name on the outside of the envelope.

**PLEASE TAKE FURTHER NOTICE** that the Hearing may be adjourned from time to time without further notice other than the announcement of such adjournment in open Court.

Dated: June 28, 2011
      Wantagh, New York

                                  **LaMONICA HERBST & MANISCALCO, LLP**
                                  Counsel to the Chapter 7 Trustee

              By:    *s/ Gary F. Herbst*
                      Gary F. Herbst, Esq.
                      A Member of the Firm
                      3305 Jerusalem Avenue
                      Wantagh, New York 11793
                      Telephone: (516) 826-6500

**LaMONICA HERBST & MANISCALCO, LLP**
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: (516) 826-6500
Gary F. Herbst, Esq.
Holly Rai, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:

                                                  Chapter 7

DAVID GOLDMAN,                    Case No.: 11-11371 (SHL)

            Debtor.
---------------------------------------------------------x

**MOTION BY CHAPTER 7 TRUSTEE FOR ORDER APPROVING STIPULATION (1) AUTHORIZING TRUSTEE TO: (A) ASSUME AND ASSIGN ANY AND ALL OF THE ESTATE'S RIGHTS IN A LEASE FOR 420 RIVERSIDE DRIVE, UNIT GE, NEW YORK, NEW YORK 10025; (B) SELL ANY AND ALL OF THE ESTATE'S RIGHTS AND INTERESTS IN A LEASE FOR 420 RIVERSIDE DRIVE, UNIT GE, NEW YORK, NEW YORK 10025; AND (2) GRANTING RELATED RELIEF**

**TO:**     **THE HONORABLE SEAN H. LANE,**
           **UNITED STATES BANKRUPTCY COURT JUDGE**

The motion of Salvatore LaMonica, Esq. (the "Trustee"), the chapter 7 trustee of the estate of David Goldman (the "Debtor"), by his counsel, LaMonica Herbst & Maniscalco, LLP, seeking the entry of an Order: (I) approving the stipulation between the Trustee and James Development (the "Landlord"): (A) authorizing the Trustee to assume and assign any and all of the estate's rights in a lease (the "Lease") for 420 Riverside Drive, Unit GE, New York, New York 10025 (the "Premises") to the Landlord; (B) sell any and all of the estate's rights and interests in the Lease for the Premises to the Landlord; and (II) granting related relief, respectfully represents as follows:

1

## BACKGROUND

A. **Procedural Background**

1. On March 29, 2011 (the "Filing Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

2. By Notice of Appointment, Salvatore LaMonica, Esq. was appointed the Chapter 7 Trustee of this estate. The Trustee has duly qualified and is the permanent Trustee in this case.

B. **Factual Background**

3. The Lease is a two-year, rent-stabilized renewal lease between the Debtor and the Landlord, which was executed pre-petition in or around February 2011. A copy of the Lease is annexed as Exhibit "A".

4. The Lease is a valuable asset of the Debtor's estate. The Premises consist of an apartment in a 13-story, pre-war cooperative apartment building known as The Hamilton. The Lease requires the Debtor to pay monthly rent of $1,355.32, which is substantially below market rate for such an apartment.

5. The Trustee and Landlord have reached an agreement regarding the assignment and sale to Landlord of all of the estate's rights and interests in the Lease, which agreement is memorialized in the Stipulation that is Exhibit "B". As set forth in the Stipulation, the Landlord has offered to purchase the estate's rights in the Lease for the sum of $60,000.00 (the "Purchase Price").

6. As further set forth in the Stipulation, the Trustee has agreed to deliver the Premises to the Landlord free of any occupancy. Given the Debtor's duty to cooperate with the Trustee under section 521(3) of the Bankruptcy Code, the Debtor should cooperate and vacate the Premises in a timely and orderly manner. However, the Trustee is seeking authority to, as

necessary, evict the Debtor (and/or any other individuals currently occupying the Premises) under the supervision of, and with the assistance of, the United States Marshals Service.

## RELIEF REQUESTED AND BASIS THEREFORE

7. The Trustee seeks approval of the annexed Stipulation: (A) authorizing the Trustee to: (i) assume and assign any and all of the estate's rights in the Lease for the Premises; (ii) sell any and all of the estate's rights and interests in, or relating to, the Lease for the Premises; and (B) granting related relief. A proposed Order is annexed as Exhibit "C".

**A.  The Stipulation Should Be Approved As Being Fair, Reasonable And In The Best Interests Of This Estate And Its Creditors**

8. Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which applies to the approval of compromises and settlements, provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." In deciding whether to approve a settlement, "a bankruptcy court must determine whether the compromise is reasonable," Saccurato v. Masters, Inc. (In re Masters, Inc.), 149 B.R. 289, 292 (Bankr. E.D.N.Y. 1992), and whether the compromise is "'fair and reasonable' and 'in the best interests of the estate.'" In re Drexel Burnham Lambert Group, Inc., 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968), reh. denied, 391 U.S. 909 (1968)).

9. The Court may consider such factors as: (i) the likelihood of success in the litigation compared to the present and future benefits offered by the settlement; (ii) the prospect of protracted litigation if the settlement is not approved as well as the related expense, inconvenience and delay, including potential difficulty in collecting on the judgment, (iii) the "paramount interests of the creditors" and the degree to which the creditors support the settlement; (iv) the nature and extent of releases to be obtained by the officers and directors; and

3

(v) whether the settlement was the result of arm's length bargaining. See Motorola, Inc. v. Official Comm. Of Unsecured Creditors, et al. (In re Iridium Operating LLC, et al.), 478 F.3d 452, 462 (2d Cir. 2007) (citing In re Worldcom, Inc., 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006); see In re Masters, Inc., 149 B.R. at 292 (citing Cosoff v. Rodman (In re W.T. Grant Co.), 699 F. 2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 822 (1983)); In re Drexel Burnham Lambert Group, Inc., 134 B.R. at 497.

10. In assessing whether a settlement should be approved, the Court need only "canvass the issues and see whether the settlement 'falls below the lowest point in the range of reasonableness.'" In re Drexel Burham Lambert Group, Inc., 134 B.R. at 497 (citations omitted). To assess the Trustee's likelihood of success, a focus on the substantive issues is appropriate. However, the Court need only canvass the issues and is not required to conduct mini-trials. See In re NV Investors II, LLC, 2007 U.S. Dist. LEXIS 58791 (E.D.N.Y. 2007) (and cases cited therein).

11. The Trustee has weighed all of the factors for the approval of a settlement under Bankruptcy Rule 9019 and has carefully considered the benefits and consequences of entering into the Stipulation with the Landlord. Acceptance of the offer by the Landlord to purchase the Lease for the Purchase Price, which was paid by the Landlord and is being held in escrow by the Trustee in accordance with the Stipulation, will transform this "no asset" estate into an estate with funds to distribute to creditors with allowed claims. Accordingly, and based on the foregoing, the Trustee respectfully requests that the Court authorize and approve the Stipulation as being fair, reasonable and in the best interests of the estate.

B.  **The Assumption and Assignment of the Lease Pursuant to the Stipulation Should Be Approved**

12. The Trustee seeks authorization to assume and assign the Lease to the Landlord pursuant to the terms of the Stipulation. Section 365(b)(1) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b).

13. The Second Circuit applies a "business judgment" test to a trustee's decision to assume or reject contracts or leases. Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 29 C.B.C.2d 1341 (2d Cir. 1993). In Orion, the court found that "a bankruptcy court reviewing a trustee's or debtor-in-possession's decision to assume or reject an executory contract should examine [the] contract and the surrounding circumstances and apply its best 'business judgment' to determine if it would be beneficial or burdensome to the estate to assume it." Id. at 1098. A court's or trustee's business judgment is the type of judgment that a business person would make under similar circumstances.

14. Here, as set forth above, the Trustee believes the Stipulation is fair, reasonable and is in the best interests of this estate and its creditors. The Landlord's offer preserves and maximizes the value of the Lease.

15. The fact that the lease is covered under New York City's Rent Stabilization Laws, see 19 NYCRR §§ 2520-2530, does not hinder the Trustee's ability to assume and assign the Lease under section 365 of the Bankruptcy Code. In In Resolution Trust Corp. v. Diamond ("Diamond I"), 18 F.3d 111 (2d Cir. 1994) *vacated and remanded sub nom.* Solomon v. Resolution Trust Corp., 130 L. Ed. 2d 5, 115 S. Ct. 43 (1944), and in Resolution Trust Corp. v. Diamond ("Diamond II"), 45 F.3d 665 (2d Cir. 1995) *certiorari denied June 26, 1995*, Reported at: 1995 U.S. Lexis 4298, the Second Circuit defined its view of the nature of rent-stabilized

5

leases. Although the Diamond cases were decided under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), bankruptcy courts have expressly held that these decisions' holdings regarding rent-stabilized leases also apply in cases under the Bankruptcy Code. In re Yasin, 179 B.R. 43, 49 (Bankr. S.D.N.Y. 1995) ("The Second Circuit's decisions in Diamond I and Diamond II foreclose the claim that rent stabilized leases are not leases (or contracts) within the meaning of federal law, and hence, 11 U.S.C. § 365").

16. In Diamond I, Resolution Trust Corporation ("RTC"), as receiver for a failed savings and loan, brought an action in the United States District Court for the Southern District of New York to repudiate leaseholds of nine apartments owned by the savings and loan pursuant to 12 U.S.C. § 1821(e). The tenants of the nine apartments, along with the State of New York, brought separate actions against RTC alleging that the RTC's repudiation of the leases would violate state rent regulations. The District Court granted a declaratory judgment in favor of the tenants and RTC appealed to the Second Circuit. In Diamond I, RTC claimed its power to repudiate contracts and leases was conferred by Congress as a tool for maximizing net asset values. The power is described in section 11 of the Federal Deposit Insurance Act ("FDIA"):

> In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease - -
>
> (A) to which such institution is a party;
> (B) the performance of which the conservator or receiver, in [its] discretion, determines to be burdensome; and
> (C) the disaffirmance or repudiation of which the conservator or receiver determines, in [its] discretion, will promote the orderly administration of the institution's affairs.

12 U.S.C. § 1821(e)(1).

17. The court stated that FIRREA expressly applies this provision to RTC. The pivotal issue was whether the rent stabilized tenancies in question were contractual in nature,

which would allow repudiation, or whether the various rent regulations transformed those tenancies into "some non-contractual, non-leasehold property interest such that they are outside the scope of [12 U.S.C. § 1821(e)(1)]," which would presumably bar repudiation. Diamond I at 118. The court stated that determining the definition of the phrase "contract" or "lease" was a matter of federal law. Id. See also Pennsylvania Dept. of Public Welfare v. Davenport, 495 U.S. 552, 557-558, 109 L.Ed.2d 588, 110 S. Ct. 2126 (1990) ("Our construction of the term 'debt' [in the Bankruptcy Code] is guided by the fundamental canon that statutory interpretation begins with the language of the statute itself."); Federal Deposit Ins. Corp. v. Philadelphia Gear Corp., 476 U.S. 425, 431, 90 L. Ed. 2d 428, 106 S. Ct. 1931 (1986) (federal law governs the meaning of "deposit" in federal statute). The Diamond I court further stated that although it was not bound by any state court pronouncements regarding the breadth or scope of the terms "contract" or "lease," it would nevertheless consult New York law concerning the design and operation of rent regulation laws. Diamond I at 118. The court reiterated the longstanding federal policy of deferring to state courts' pronouncements regarding the definitions of property interests. Id. See Butner v. United States, 440 U.S. 48, 55, 59 L. Ed. 2d 136, 99 S. Ct. 914 (1979).

18.     After a thorough review of New York's rent stabilization laws, the Second Circuit in Diamond I determined that a rent-stabilized tenancy is dependent upon a lease, and therefore was subject to RTC's repudiation power under 12 U.S.C. § 1821(e)(1). Diamond I at 119. The Diamond I court reached a similar conclusion with regard to rent-controlled tenancies:

> We conclude, therefore, that New York's statutory tenancies - - whether under rent stabilization or rent control - - are contract-based leaseholds. That being the case, they fall within the express language of § 1821(e), and are subject to RTC's statutory power to repudiate. By repudiating the contract or lease creating the tenancy, RTC is effectively dissolving the tenancy. Once it has done so, no statutory or regulatory provision -- at least none that can pass constitutional muster - - can revive the tenancy.

7

Id. at 121.

19. On appeal, the Supreme Court, in Solomon v. Resolution Trust Corp., 130 L. Ed. 2d 5, 115 S. Ct. 43, 115 S. Ct. 44 (1994), granted certiorari, vacated and remanded the Second Circuit's decision in Diamond I, for reconsideration in light of O'Melveny & Myers v. FDIC, 129 L. Ed. 2d 67, 114 S. Ct. 2048 (1994). The questions raised in O'Melveny & Myers were ones of federal law interpretation. On remand, the Second Circuit undertook another lengthy discussion and reaffirmed its decision in Diamond I. See Diamon II. The defendants' application for a writ of certiorari was denied June 26, 1995, Reported at 1995 U.S. Lexis 4298.

20. In the Diamond I and Diamond II cases, the Second Circuit clearly established its position that (i) the term "lease" in a federal statute is defined under federal law, and (ii) a debtor/tenant's rights under a rent stabilized (or rent controlled) lease in New York are grounded solely in the lease and are not unique statutory rights. Here, this means that under the Bankruptcy Code, the Debtor's (Trustee's) rights in the Premises are rooted in the Lease.

21. The Second Circuit grounded its holding in Diamond I in significant commentary on policy considerations and Congressional intent. In one such argument, the court referred to provisions of the Bankruptcy Code, stating that:

> If it chooses, Congress can grant disaffirmation or repudiation power in a way that preserves state regulated leases and contracts. For example, under the Bankruptcy Code a trustee in bankruptcy is granted the power to "assume or reject any executory contract or unexpired lease of the debtor."

11 U.S.C. § 365(a).

22. Section 365(c) of the Bankruptcy Code specifically refers to several types of executory contracts and unexpired leases that a trustee may not assume or assign. That list does not include any rent-stabilized or rent-controlled leases. Had Congress intended to offer such

8

protection to debtors, it could have easily codified such intent within section 365(c) of the Bankruptcy Code.

23. Based upon the Second Circuit's decisions in the <u>Diamond</u> cases, the Debtor's bankruptcy rights under the Lease are governed by federal law, and are not restricted by the state's rent stabilization laws. By virtue of the Debtor's bankruptcy filing, those rights became property of the Debtor's estate, and are now governed and controlled by the Trustee, whose right to assume and assign the lease pursuant to Section 365, as a threshold matter, is unrestricted by the state's rent stabilization laws.

24. For the foregoing reasons, the assumption and assignment of the Lease to the Landlord should be approved.

**C. The Trustee Should be Authorized to Take all Necessary Steps to Effectuate the Assumption and Assignment of the Lease Pursuant to the Terms of the Stipulation**

25. The Trustee also seeks authorization to take all steps necessary to effectuate the assumption and assignment of the Lease to the Landlord, including, but not limited to, signing all necessary documents to assign the estate's interest in the Lease the Landlord, and taking the appropriate legal action necessary to convey the Premises free of any and all occupants. Indeed, the Stipulation with the Landlord is expressly conditioned upon the Trustee's ability to deliver the Premises to the Landlord free of any occupancy, possession or tenancy by anyone, including the Debtor. To effectuate this sale, the Court should order the Debtor and all occupants of the Premises vacate the Premises by a date certain and, if necessary, enforce such order by authorizing the Trustee to have the United States Marshals Service evict the Debtor and/or any other occupants of the Premises.

26. The proposed Order provides that the Debtor and any other individuals occupying the Premises must vacate the Premises within thirty (30) days after the entry of the Order (the "Vacate Date"). See Exhibit "C". The proposed Order further provides that the Trustee will serve notice of entry of the Order upon the Debtor and any and all occupants of the Premises within three days of its entry. See id. The Trustee submits that the timeframe set forth in the proposed Order is reasonable insofar the Debtor and all occupants of the Premises will have notice of the Trustee's intention to assume, assign and sell the Lease to the Landlord by this Motion, which will be served upon the Debtor (through his counsel of record) and all occupants of the Premises. This Motion is returnable July 25, 2011. The Debtor and any and all occupants will thus have nearly sixty (60) days' notice prior to proposed date by which they must vacate the Premises.

27. However, due to the nature of this asset, it is impossible for the Trustee to currently predict all required actions that will be necessary in connection with the assumption, assignment and sale of the Lease to the Landlord. Should the Debtor or any occupants of the Premises refuse to leave voluntarily by the Vacate Date, thereby interfering with the Trustee's statutory duty to maximize the value of Lease, the Trustee will be required to evict the Debtor and any individuals occupying the Premises. Therefore, the proposed Order provides the following:

> If the Debtor and/or any other individuals currently occupying the Premises do not vacate the Premises on or before the Vacate Date in accordance with this Order, then the Trustee is authorized, under the supervision and with the assistance of the United States Marshal, to take all steps necessary to take possession of the Premises, including breaking open and entering said Premises and evicting all persons located within said Premises. In that event: (a) anyone interfering with the execution of this Order shall be subject to arrest by the United States Marshal and/or his or her representative; (b) the Trustee will account completely for all property seized pursuant to this Order, shall compile a written inventory of all such property and shall provide a copy to the United States Marshal, who shall include such copy with his or her return to the Court; and (c) the Trustee shall act as substitute custodian of any and all property seized pursuant to this Order and shall hold harmless the United States

> Marshal and its employees from any and all claims, asserted in any court or tribunal, arising from any acts, incidents, or occurrences in connection with the seizure and possession of the property, including any third-party claims.

See Exhibit "C ".

28. Unquestionably, the Court has the power to issue and enforce such order. See generally In re Keene, 162 B.R. 935, 944 (Bankr. S.D.N.Y. 1994). Section 105(a) of the Bankruptcy Code allows the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . . ." 11 U.S.C. § 105. Such authorized actions should include seeking an order from this Court directing the United States Marshals Service to effectuate the terms of the assumption, assignment and sale of the Lease by evicting all occupants from the Premises.

29. Furthermore, an eviction of the Debtor from the Premises to effectuate the sale of the Lease is no different than an eviction of a debtor in connection with a court ordered sale of a debtor's home. The Debtor is also required under section 521(3) of he Bankruptcy Code to leave the Premises by the Vacate Date, which requires the Debtor to cooperate with the Trustee in his administration of this estate.

30. For the foregoing reasons, the Trustee should be authorized to take all steps necessary to effectuate the assumption and assignment of the Lease.

**D.** **The Proposed Sale Of The Estate's Rights And Interests In, Or Relating To The Lease Should Be Approved**

31. A chapter 7 "trustee is required to liquidate a debtor's assets in a manner that will be most beneficial to the creditors." In re Persky, 893 F.2d 15, 18 (2d Cir. 1989); see 11 U.S.C. § 704(a).

32. It is axiomatic that a trustee may sell property of the estate, after notice and a hearing, pursuant to section 363(b) of the Bankruptcy Code.

33. Property of a chapter 7 estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This definition is broad and includes all types of property, tangible and intangible, as well as causes of actions; property interest is not outside this broad definition merely because it is novel or contingent. See In re Mid-Island Hosp., Inc., 276 F.3d 123, 38 Bankr. Ct. Dec. (CRR) 268 (2d Cir. 2002); In re Bracewell, 322 B.R. 698 (M.D. Ga. 2005).

34. Here, the Lease was property of the Debtor at the time this case was commenced because: (A) the Debtor originally acquired his right to occupy the Premises prior to the Filing Date, and (B) all of the events necessary to create the Lease that the Trustee now proposes to sell transpired prior to the Filing Date. Accordingly, it cannot be disputed that the Lease is property of the estate that the Trustee may sell pursuant to section 363(b) of the Bankruptcy Code.

35. The Trustee is proceeding with a direct sale of the Lease to the Landlord because, other than the Debtor, the only party to whom the Lease may be transferred is the Landlord.[1] The Landlord has already paid the Purchase Price to the Trustee. Once the Trustee delivers possession of the Premises to the Landlord vacant of any occupancy, the Purchase Price will inure to the benefit of this estate and its creditors. The deadline for filing proofs of claim against the Debtor's estate has not yet passed, however, the Debtor scheduled over $400,000.00 in unsecured debt. Upon information and belief, there are no other assets in this estate for the Trustee to administer. Thus, approval of the Stipulation will ensure that the Debtor's creditors receive some distribution on account of their allowed claims.

---

[1] Based upon the schedules filed with this Court, the Trustee does not believe that the Debtor has the financial wherewithal to purchase the Lease. Further, the Debtor has not offered to purchase the estate's interest in the Lease from the Trustee.

36. For the foregoing reasons, the terms and conditions should be approved and made binding upon the assumption and assignment of the Lease.

## NOTICE AND NO PREVIOUS REQUEST FOR RELIEF

37. Notice of this Motion is being mailed to the Debtor (through his counsel of record), applicable taxing authorities and all of the Debtor's known creditors. It is requested that the Court approve such notice as good and sufficient notice of this Motion.

38. No previous request has been made for the relief requested by this Motion.

**WHEREFORE,** the Trustee requests that the Motion be granted, and that the Court grant such other and further relief it deems just and proper.

Dated: June 28, 2011
      Wantagh, New York                **LaMONICA HERBST & MANISCALCO, LLP**
                                          Counsel to the Chapter 7 Trustee

                          By:    *s/ Gary F. Herbst*
                                  Gary F. Herbst, Esq.
                                  A Member of the Firm
                                  3305 Jerusalem Avenue
                                  Wantagh, New York 11793
                                  Telephone: (516) 826-6500

*M:\Documents\Company\Cases\Goldman, David\Motion to Approve Stip.docx*